# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| **DEANGELO THOMAS** | **CIVIL ACTION NO. 21-1164-P** |
| **VERSUS** | **JUDGE FOOTE** |
| **CAPTAIN BOYER, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff DeAngelo Thomas, ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was filed in this court on April 29, 2021. Plaintiff is currently incarcerated at the Madison Parish Correctional Center but claims his civil rights were violated by prison officials while incarcerated at the Bossier Maximum Security Center in Plain Dealing, Louisiana. Plaintiff names Capt. Boyer, Lt. Porter, Nurse Molley, Nurse Cindy Higgins, Deputy Jay Turner, Deputy Anthony McCarthy, and the Parish of Bossier as defendants.

On January 21, 2021, Plaintiff was hopping with the assistance of a walker when he fell face first to the floor. He had a broken leg which was in a cast, and he could not place both feet on the floor. He claims he fell because the walker was insufficient for its purpose and the medical staff was incompetent because they assigned him incorrect medical equipment.

Plaintiff claims the medical and facility staff arrived at the scene with a wheelchair per orders of Nurse Molley and Nurse Cindy Higgens. He made it known that he was in pain. Plaintiff complains that Nurse Molley and Nurse Cindy Higgens should have requested a stretcher to transport him. He claims Deputy Anthony McCarthy and Deputy Jay Turner lifted him in a folded position and further injured his back and arm.

Plaintiff claims that when he arrived at the infirmary, he did not receive a proper medical examination. He claims Nurse Molley repeatedly asked him if he broke his leg in November instead of checking the injury resulting from his fall. Plaintiff thinks Nurse Molley was trying to obtain information about his legal issues and he felt uncomfortable. He claims that when he told Nurse Molley that his arm hurt, she responded, "he don't know if his back or his arm is hurting" and then asked him again if he broke his leg in November. He responded no and that he did not want to talk anymore because he felt that she was rude and did not care about him hurting himself or anything he had to say. Nurse Molley then told the deputies to take him to his cell. Plaintiff asked for an ice pack for his head injury and headache. He claims Nurse Molley refused him an icepack. Plaintiff claims he should have been transported to the emergency room for x-rays and an examination because he had a knot on his head and his back and arm were in pain.

Plaintiff claims that when the two deputies returned him to his cell, they lifted him in a folded position and tossed him on his side and left him in his bed in pain. His cellmate helped him to position himself more comfortably in his bed.

Later that day, Deputy McCarthy moved Plaintiff to a camera cell. He claims Nurse Cindy Higgins was present and asked him if he broke his leg in November. He claims he replied no and that he broke it in October and had surgery that same month. Plaintiff ended the conversation and stated that he was going to see what his lawyer had to say about their harassing questions about his broken leg.

Plaintiff admits that in February of 2021, his back was x-rayed and Nurse Molley informed him the results were fine. He claims his arm and head were never checked.

On March 8, 2021, Plaintiff wrote a kite to the medical department about his arm. The nurse told him that she would put him on the list to see the doctor. He was charged $15.00 for his medical visit. He claims that when he went to see the doctor in the infirmary, Nurse Molley tried to charge him an additional $15.00. He claims inmates are not supposed to be charged for follow-up visits. Plaintiff refused to pay the additional $15.00 for the follow-up visit with the doctor. Plaintiff claims he did not see a doctor and only saw the nurses before he was returned to his dorm. Plaintiff claims he did not refuse to be seen by the doctor but refused to be charged additional fees to be seen by the doctor. He claims he had to make a sick-call two months after his accident because he did not receive proper medical treatment.

On March 9, 2021, Plaintiff saw Nurse Molley and Nurse Jennifer and showed them the knot on his head. He claims both Nurse Molley and Nurse Jennifer told him that he did not have a knot even though to him it was very visible. He admits they gave him Tylenol for pain.

Plaintiff claims Captain Boyer and Lt. Porter denied his grievances in the administrative remedy procedure. He thinks they were denied without an investigation and without review of the camera footage of the incident.

Plaintiff claims he still has back pain and right arm problems. He claims he has headaches all the time. He claims he had a knot on his head from January 31, 2021 until April 10, 2021.

Accordingly, Plaintiff seeks monetary compensation.

## LAW AND ANALYSIS

**Medical Care**

Plaintiff claims the medical staff was incompetent because they assigned him a walker when he had a broken leg. He claims the medical staff had him transported to the infirmary in a wheelchair after his fall instead of on a stretcher. He claims the Deputies further injured him when they lifted him in a folded position into the wheelchair. He claims he did not receive a proper medical examination after his fall. He claims he was refused an icepack for his head injury and headache. Plaintiff claims the medical staff should have transported him to the hospital for a proper examination and x-rays. Plaintiff claims the deputies returned him to his cell and tossed him on his bed while in a folded position. He claims his head and arm were not checked when his back was x-rayed. He claims the nurses told him that he did not have a knot on his head when he did.

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in

matters which concern alleged denial of, or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84. In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir.

1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The medical staff provided Plaintiff with a walker after he broke his leg and had surgery prior to his fall. After Plaintiff fell on January 21, 2021, the staff responded to the scene with a wheelchair to transport him to the infirmary. Plaintiff does not allege that Deputy McCarthy and Deputy Turner acted with deliberate indifference when they lifted him in a folded position and placed him in the wheelchair or when they returned him to his cell and lifted him in a folded position and allegedly tossed him onto his bed. Plaintiff admits that in February of 2021, his back was x-rayed and he was told that his results were fine. He admits that he saw the nurse on March 8, 2021 and was scheduled to see the doctor for his injuries. He admits that he had an appointment to see the doctor but refused to pay the fee so he only saw the nurses before he was returned to his dorm. He admits the nurses gave him Tylenol for his pain.

    Plaintiff disagrees with the treatment Defendants provided him. He claims he should have been provided medical equipment other than a walker for his broken leg. He claims he should have been transported to the infirmary on a stretcher after his accident and not a wheelchair. He claims he did not receive a proper medical examination when he arrived at the infirmary. He claims he should have been given an icepack for his head injury and headache. Plaintiff claims he should have been transported to the hospital for x-rays and a proper examination. He claims his arm and head were not checked when his back was x-rayed. He claims he should not have been questioned about his prior broken leg and surgery. As previously discussed, disagreement with the diagnostic measures or

methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's medical care claims should be dismissed with prejudice as frivolous.

**Medical Fees**

Plaintiff claims he was going to be charged an additional medical fee to see the doctor even though inmates are not supposed to be charged for follow-up visits.

Plaintiff does not have a constitutional right to free medical care. Hutchinson v. Belt, 957 F.Supp. 97 (W.D. La. 1996). Furthermore, Plaintiff does not allege that he was denied medical treatment by a doctor because he could not pay the fee, but because he refused to pay the fee. Plaintiff admits that he was seen by the nurses.

Accordingly, Plaintiff's medical fee claims should be dismissed with prejudice as frivolous.

**Administrative Remedy Procedure**

Plaintiff claims Captain Boyer and Lt. Porter denied his grievances in the administrative remedy procedure without an investigation and without review of the camera footage.

Inmates do not have a constitutionally protected right to a prison administrative grievance procedure. See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (United States District Court, Western District of Louisiana 4/24/00); Brown v. Dodson, et al., 863 F. Supp. 284 (United States District Court, Western District of Virginia 6/2/94); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231. Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures. Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts. Flick, supra. Thus, insofar as Plaintiff alleges Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.

Accordingly, these claims regarding the administrative remedy procedure should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's civil rights claims occurring prior to June 21, 2018 be dismissed with prejudice as frivolous under 28 U.S.C. § 1915(e) and his civil rights claims occurring after June 21, 2018 be dismissed without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 8th day of February, 2024.

Mark L. Hornsby
U.S. Magistrate Judge